**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| MICHAEL MARTORAL PRO SE | : | CIVIL ACTION |
| | : | PRISONER |
| VS. | : | 3:02CV12(AWT)(DFM) |
| OFFICER ART THODE | : | SEPTEMBER 22, 2004 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

This is an action brought by an incarcerated pro se prisoner against retired Meriden Police Officer Art Thode.  The plaintiff claims that Officer Thode hit his head against a briefcase, pulled his hair and hit him in the head with an object from the officer's belt when the police officers were attempting to bring him into custody.  The plaintiff was hiding under a bed in an apartment into which he fled after having escaped from the police earlier in the day.

In recompense for his alleged injuries, the plaintiff seeks "a copy of his medical records."  In his deposition, the plaintiff indicates that he wants the police officer to know that what he did was wrong.

On June 9, 2000, Officer Art Thode interviewed a Ms. Michele Loiler, who called the police to complain that Michael Martoral, her ex-boyfriend, had threatened her after discovering that she had obtained a restraining order against him.  Officer

1

Thode notified the Meriden Police to be on the lookout for Michael Martoral, and Officer Terry Smith found him a short time afterward.  Officer Smith brought Michael Martoral to the public housing apartment complex where Ms. Loiler was giving her statement to police.

Officer Smith learned that Michael Martoral was under arrest, and she attempted to place handcuffs on him and pat him down.  Michael Martoral pulled away from Officer Smith and escaped by running into the Mills Public Housing Apartment complex.  Officer Merrigan and Officer Lavoie gave chase and followed Michael Martoral into the public housing, up three flights of stairs.  Michael Martoral ran to an apartment, opened the door, let himself in and slammed and locked the door behind him.  The resident of the apartment opened the door for the police officers.

Upon searching the apartment, the officers found the bedroom in which Michael Martoral was hiding.  Michael Martoral was hiding under a bed, with his feet sticking out.  The police officers announced that if he did not come out voluntarily, they would "spray" him.   He did not come out and the officers used the OC foam.  Michael Martoral still did not come out from under the bed, and resisted when the officers began to pull him out.  During the struggle to contain Michael Martoral, the bed tipped, the milk crates supporting the bed were knocked over and other objects in the room were "knocked about".   Michael Martoral claims that during the struggle, he was pushed into a briefcase, his hair was pulled, and that he was hit on the head from an object removed from the officer's belt.  These events are not found in any of the police reports.  While

2

wrestling with Michael Martoral, the police officers observed a hatchet and a gun in the room, within inches of Michael Martoral.  The police officers only learned later that the gun was a paintball gun designed to look like an M16 with a collapsible stock.  Michael Martoral continued to struggle with the officers after he was handcuffed and when he was being escorted out of the building and to the police cruiser.

At the Police Department, Michael Martoral was observed for after-effects of the OC Spray.  He had no side effects, but complained of a cut to the head.  Michael Martoral was taken to Meriden's Midstate Hospital by ambulance, treated for his cut and was returned to police custody the same day.  The Plaintiff has not expended any sums of money for medical attention to his head cut.  There are no other allegations of misconduct by any other police officer other than the named Defendant Art Thode.  Michael Martoral has identified Officer Art Thode as the police officer in the apartment by his name badge and other identifying features.

In addition to the relief requested in the complaint—a copy of his medical records-- Michael Martoral, when asked what he is suing for in his deposition, responded that he is "not looking for anything big . . . . I just want him to know what he did was wrong.  He was wrong.  What he did was foul, and that he did wrong." Michael Martoral has not asked for anything further.

This memorandum is offered in support of the Defendant's motion for summary judgment.  It is the position of the defendant that, assuming for the purposes of this summary judgment, that it was the defendant who was in the apartment with the

3

plaintiff, the police officer's actions were reasonable and it was reasonable for the police officer to believe that his actions did not violate the plaintiff's rights. Furthermore, the actions as alleged by the plaintiff do not amount to excessive force, and the defendant is entitled to qualified immunity. Also, the plaintiff's complaint does not allege the violation of either a constitutional or statutory right, nor does he assert that the Court has jurisdiction for any of the given reasons. Finally, the plaintiff's request for relief has been provided to him and thus the matter is moot. For these reasons, and for the reasons more fully set forth below, summary judgment is appropriate in this matter.

## I.    ARGUMENT

### A.    <u>Standard of Review for a Motion for Summary Judgment</u>

It is the position of Officer Art Thode that he is entitled to summary judgment as a matter of law as the plaintiff's February 13, 2001 complaint fails to state a claim as against him.

Federal Rule of Civil Procedure 56(e) requires the entry of Summary Judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."

"Neither courts nor defendants should be subjected to trials that are little more than harassment." *Applegate v. Top Associates*, 425 F.2d 92, 96 (2d Cir. 1970).

"Summary judgment is properly granted, even in complex cases, where the facts established by the movant's evidence are opposed solely by the opponent's conclusory assertions or are clearly uncontroverted and the facts so established are 'not susceptible' of the interpretation which the opponent sought to give them to create through inference a dispute of material fact." *Carroll v. US Steelworkers of America*, 498 F.Supp. 976, 978 (1980) (Citations omitted).

When Rule 56(e) shifts the burden of proof to the non-moving party, that party must produce evidence to show the existence of every element essential to the case which it bears the burden of proving at trial. *Equimark v. CIT Financial*, 812 F.2d 141, 144 (3d Cir. 1987). To defeat a motion for summary judgment, the nonmoving party must show "that there are specific factual issues that can only be resolved at trial." *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1996)(Citations omitted). "A party may not defeat a motion for summary judgment merely by pointing to a potential issue of fact; there must be a genuine issue of material fact." *1185 Ave. of the Americas Associates v. RTC*, 22 F.3d 494, 498 (2d Cir. 1994)(Citations and internal quotation marks omitted). "The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Barnhard v. Pickerel, Schaffer & Ebeling*, 12 F.3d 1382, 1389 (6th Cir. 1993). "The non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or

conjecture." *Western World Insurance Co. v. Stack Oil*, 922 F.2d 118, 121 (2d Cir. 1990)(citations omitted and internal quotation marks omitted).

When "properly employed, summary judgment is a useful device for unmasking frivolous claims and putting a definite end to meritless litigation. Thus, the mere possibility that a factual dispute may exist, without more, is not sufficient to overcome a convincing presentation by the moving party. The litigant opposing summary judgment . . . just bring to the Court's attention some alternative indication that his version of relevant facts is not fanciful." *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980)(citations omitted). "Neither the plaintiff's rhetoric nor his imagination can make undisputed facts into disputed ones or raise a genuine issue with respect thereto." *Schoonfield v. Mayor and City Council of Baltimore*, 339 F. Supp. 106, 107-108 (D. Md. 1975) aff'd, 544 F.2d 515 (4th Cir. 1975).

Summary judgment may be granted only if "there is no genuine issue as to any material fact . . . ." Fed.R.Civ.P. 56(c ). A fact is material for these purposes if it "might affect the outcome of the suit under the governing law. An issue of fact is genuine if the evidence is such that a reasonable jury would return a verdict for the nonmoving party." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 68 (2d Cir. 2001). The party moving for summary judgment bears the burden of proving that there is no genuine issue of material fact, *Rodriguez v. City of New York*, 72 F.3d 1051, 1060-61(2d. Cir. 1995), which burden is discharged by pointing to an absence of proof on the non-movant's part. *Parker v. Sony Pictures Entertainment, Inc.*, 260 F.3d 100, 111 (2d.

Cir. 2001). "The duty of the Court is to determine whether there are issues to be tried; in making that determination, the court is to draw all factual inferences in favor of the party against whom summary judgment is sought, viewing the factual assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the party opposing the motion." *Rodriguez v. New York*, 72 F.3d at 1060-61.

**B.     The Defendant Officer is Entitled To Summary Judgment on the Basis of Qualified Immunity**

It is the position of the defendant officer that, it was not Officer Thode who entered the apartment in pursuit of the plaintiff. However, in an attempt to resolve this matter through summary judgment, even assuming that it was Officer Thode who entered the apartment, he is entitled to qualified immunity for his actions in restraining Michael Martoral and placing him in the custody of the Meriden Police.

The qualified immunity standard gives ample protection for mistaken judgment by protecting all but the plainly incompetent or those who knowingly violate the law. *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1096, 89 L.Ed.2d 271 (1986).

The protection of qualified immunity afforded to the defendant Police officer for their actions in their defense of their personal safety are broad and far-reaching. "Qualified immunity is a powerful shield that insulates government officials from suit." *Eversole v. Steele*, 59 F.3d 710 (7th Cir. 1995)(citations omitted)(summary judgment granted on the basis of qualified immunity).

7

As a general rule, police officers are entitled to qualified immunity if "1) their conduct does not violate clearly established constitutional rights; or 2) it was objectively reasonable for them to believe that their actions did not violate these rights." *Oliveria v. Mayer,* 23 F.3d 642, 648 (2d Cir. 1994); *Golino v. New Haven*, 950 F.2d 864, 870 (2d. Cir. 1991).

The Courts should ask whether the [police officer] acted reasonably under settled law and under the circumstances; not whether another reasonable, or more reasonable interpretation of events can be construed five years after the fact. *Hunter v. Bryant*, 502 U.S. 224, 228-29, 112. S.Ct. 534, 537, 116 L.Ed.2d 589 (1991).

1.      **The defendant Police Officer's Actions were Reasonable Given the Circumstances, and Qualified Immunity Should Apply.**

Assuming the facts as set forth in the plaintiff's complaint to be true, it is the position of the defendant that he is entitled to summary judgment based on qualified immunity. The actions of the defendant police officer were reasonable given the circumstances that he found himself in.

A review of the complaint, the police report and the plaintiff's deposition show that the plaintiff was wanted for questioning in relation to a complaint made by his ex-girlfriend that he had threatened her. When he was found, he was brought in the back of a police car to the scene where the ex-girlfriend was giving a statement to defendant Officer Thode. The plaintiff was removed from the police cruiser, and was in the process of being patted down prior to being handcuffed when he broke away from the

police officer and ran off.  Two Meriden Police Officers, having witnessed his escape from custody, gave chase.  They followed him inside the complex of a public housing apartment building.  The plaintiff ran into one of the apartments, slamming and locking the door behind him.   The occupant and her baby were still in the apartment when she let the officers in.  The plaintiff was found in one of the bedrooms, hiding under a bed.  He refused to voluntarily come out, and one of the police officers was required to use pepper spray, or "OC foam" in an attempt to dislodge the plaintiff from his hiding spot.  When he did not come out, the officers were required to physically pull him from his spot.

Both the plaintiff's version of events and the police reports show that there was a great deal of struggling between the police officers and the plaintiff in an effort to subdue him.  The police officers noticed weapons in the room, only inches from the plaintiff's head, which were accessible to the plaintiff and may have been used against the officers.  The police had witnessed the plaintiff's earlier flight from another police officer when she was placing him under arrest and were the ones who chased the plaintiff into the public housing complex.  The police had to obtain entrance into the apartment in which the plaintiff had locked himself into, with the tenant and her baby.

Even accepting the plaintiff's version of the facts as true, being pepper sprayed, having his hair pulled, being pushed onto a briefcase and being hit on the head with an object from the police officer's belt in this circumstance was reasonable.  The officer

9

acted appropriately given the circumstances surrounding the plaintiff's apprehension and the plaintiff's actions.

The Supreme Court's standard of reasonableness is comparatively generous in favor of the police in cases where potential danger, emergency conditions, or other exigent circumstances are present. *Roy v. Inhabitants of the City of Lewiston, ME*, 42 F.3d 691, 695 (1st Cir. 1994). In *Graham v. Connor*, 490 U.S. 386 (1989), the Court held that the "calculus of reasonableness" must make "allowances" for the need of police officers to "make split second judgments—in circumstances that are tense, uncertain and rapidly evolving – about the use of force that is necessary in a particular situation." *Graham,* 490 U.S. at 396-97.

The reasonableness inquiry depends only upon the officer's knowledge of the circumstances immediately prior to and at the moment the office made the split-second decision to use force. *See, Schultz v. Long*, 44 F.3d 643, 649 (8th Cir. 1995), holding that "evidence that the [defendant police officers] created the need to use force by their actions prior to seizure is irrelevant"; *Carter v. Buscher*, 973 F.2d 1328, 1332 (7th Cir. 1992); *Greenridge v. Ruffin*, 927 F.2d 789, 792 (4th Cir. 1991); *Salim v. Proulx,* 93 F.3d 86 (2d. Cir. 1996).

The Court in *Roy* held that "the Supreme Court intends to surround the police who make on the spot choices in dangerous situations with a fairly wide zone of protection in close cases. Decisions from this circuit [the First] and other circuits are consistent with this view. . . . and in close cases, a jury does not automatically get to

second-guess those life and death decisions, even though the plaintiff has . . . a plausible claim that the situation could have been handled differently." *Roy*, 42 F.3d at 695.

"[T]he qualified immunity defense is generally available against excessive force claims." *Finnegan v. Fountain*, 915 F.2d 817, 822-23 (2d Cir. 1990). All claims of excessive force in the course of an arrest are adjudged under the Fourth Amendment and its 'reasonableness' standard. *Lennon,* 66 F.3d at 425 (citing *Graham v. Connor,* 490 U.S. 386, 395 (1989). The test for qualified immunity in excessive force claims is "whether a reasonable officer could have believed that the use of force alleged was objectively reasonable in light of the circumstances." *Lennon,* 66 F.3d at 425 (citation and internal quotation marks omitted).  In reviewing the conduct of law enforcement officials, "the 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."     *Graham    v.    Connor,*    490    U.S.    386,    396    (1989).

Officer Art Thode is entitled to Summary Judgment in this matter.  To the extent that he is the officer who retrieved the plaintiff from the apartment in which he was hiding under the bed, the officer acted reasonably and conservatively given the situation which was presented to him at the time.  Accordingly, the defendant should be accorded qualified immunity for his actions in this litigation.

11

**2.      The Defendant Police Officer Had an Objectively Reasonable Belief that His Actions Were Reasonable, Not Excessive and Constitutional.**

Furthermore, it is the contention that the actions complained of by the plaintiff, assuming them to be true, cannot be construed as excessive force.

In determining whether the force was excessive, a Court must "examine the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

In this matter, the plaintiff's specific claims are that he was pepper sprayed, pulled by the hair, pushed into a briefcase and hit on the head with an object from the defendant officer's belt.   Immediately prior to the events in the apartment, the plaintiff had broken away from a police officer attempting to place him into custody.   The plaintiff fled on foot into the public housing complex, ran up three flights of stairs and barricaded himself in an apartment with the tenant and her sleeping baby.

The defendant contends that, to the extent that it is found that he was the officer in the apartment with the plaintiff, that it was objectively reasonable for him to believe that his actions, under the specific circumstances of this case, to bring the fleeing plaintiff into custody and gain control over the plaintiff after he had already fled once from the police, did not violate any clearly established right of the plaintiff. The concern of this aspect of the qualified immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct, *see,*

12

*Saucier*, 533 U.S. at 205, and that police are immune from liability if such reasonable mistakes are made. *Id.* at 206.    Qualified immunity operates to protect officers from the sometimes "hazy border between excessive force and acceptable force."  *Saucier v. Katz*, 533 U.S. 194, 206(2001), *citing, Priester v. Riviera Beach*, 208 F.3d 919, 926-27 (C.A. 11 2000).

The defendant contends that summary judgment is appropriate in this matter because only the minimum amount of force was utilized by the police officers to regain control over the plaintiff.  In an effort to extract the plaintiff from his hiding spot under the bed, the police used pepper spray.  After pulling him out from under the bed, the police officers still struggled to place the plaintiff in handcuffs and to get him to leave the bedroom in the apartment.

**C.    The Plaintiff has failed to allege that this Action is Brought under 42 USC 1983, nor has he alleged a deprivation of any Constitutional or Statutory right.**

It is the position of the defendant that summary judgment is appropriate because the complaint fails to state a claim under 42 USC 1983, nor has the complaint asserted any type of jurisdiction, a prerequisite for the matter to come before the Federal court.  The plaintiff has failed to allege the deprivation of any Constitutional or Statutory right, nor has he even indicated that this action has been brought under 42 USC 1983.    The defendant's Motion for a More Particular Statement was denied by the Court, and the defendant is left to address the deficiencies as set forth in the plaintiff's complaint.

In order to state a successful claim under 42 U.S.C. § 1983, the plaintiff must first allege a deprivation of a *federal* constitutional or statutory right. *See Golden State Transit Corp. v. City of Los Angeles,* 493 U.S. 103, 105-06, 110 S.Ct. 444, 447-49, 107 L.Ed.2d 420 (1989); *Maine v. Thiboutot,* 448 U.S. 1, 4-5, 100 S.Ct. 2502, 2504-05, 65 L.Ed.2d 555 (1980). [A] plaintiff's vague and conclusory assertion  . . . that the defendant violated his rights under 42 U.S.C. § 1983--without any indication whatsoever of the federal statutory or constitutional basis for these rights--is insufficient to support his federal civil rights claim.   [I]t is well settled that to state a civil rights claim under § 1983, a complaint must contain specific allegations of fact which indicate a deprivation of [federally protected] rights; allegations which are nothing more than broad, simple, and conclusory statements are insufficient to state a claim under § 1983. *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 887 (2d Cir.1987) (citations omitted).  *See, Field v. Kirton*, 856 F.Supp. 88, 93 (D.Conn. 1994)(summary judgment granted on pro se lawsuit).

Because the plaintiff's complaint is deficient, that it does not assert jurisdiction and does not claim the deprivation of a constitutional or statutory right, the plaintiff's complaint has failed to state a claim upon which relief can be granted, and the defendant seeks    a    summary    judgment    or    dismissal    of    this    matter.

14

**D.** **The Plaintiff's Request for Relief is Moot inasmuch as He has Been Provided with the Relief Sought, and Summary Judgment is Appropriate.**

The plaintiff, as his request for relief, indicated that he was seeking "medical reports on what had happen" [sic]. Those were attached to the complaint, and thus copies have been provided to him. This matter is moot because the plaintiff has been provided with the relief that he has sought, and summary judgment or dismissal should enter.

There is no question that "[m]ootness implicates the court's subject matter jurisdiction and is thus a threshold matter for us to resolve.... It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide **moot** questions, disconnected from the granting of actual **relief** or from the determination of which no practical **relief** can follow." (Citations omitted; internal quotation marks omitted.) *Ayala v. Smith,* 236 Conn. 89, 93, 671 A.2d 345 (1996). "[T]he existence of an actual controversy is an essential requisite to appellate jurisdiction ... It is beyond question that we are without jurisdiction to issue advisory opinions or to decide **moot** questions, disconnected from the granting of actual **relief** or from the determination of which no practical **relief** can follow." *Chief of Police v. Freedom of Information Commission,* 68 Conn.App. 488, 494, 792 A.2d 141 (2002).

Under Article III, section 2 of the Constitution, federal courts lack jurisdiction to decide questions that cannot affect the rights of litigants in the case before them. *See DeFunis v. Odegaard,* 416 U.S. 312, 316, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974) (per

15

curiam) (citing *North Carolina v. Rice,* 404 U.S. 244, 246, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971)); *Bragger v. Trinity Capital Enterprise Corp.,* 30 F.3d 14, 16 (2d Cir.1994). A case is **moot** when "it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, [and] interim **relief** or events have completely and irrevocably eradicated the effects of the alleged violation." *Associated Gen. Contractors of Conn. v. City of New Haven,* 41 F.3d 62, 66-67 (2d Cir.1994) (quoting *County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979)). *See, Davis v. New York*, 316 F.3d 93, 99 (C.A.2 N.Y. 2002). Article III of the United States Constitution limits the federal court's jurisdiction to a "case or controversy." Embodied in the "case or controversy" requirement is the concept of mootness, which "defines constitutionally minimal conditions for the invocation of federal judicial power." *Franks v. Bowman Transportation Co.,* 424 U.S. 747, 754 (1976). "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack,* 395 U.S. 486, 496 (1969). *See, Soto v. Meachum*, 1991 WL 218481 at *3 (D.Conn. 1991).

"The hallmark of a **moot** case or controversy is that the **relief** sought can no longer be given or is no longer needed". *Martin-Trigona v. Shiff,* 702 F.2d 380, 386 (2d Cir.1983)

In this matter, the relief requested from the plaintiff is the "medical report on what had happen"[sic]. The medical report in question was attached to the complaint and

16

thus been provided to the plaintiff.  The plaintiff has not requested anything else in his complaint for relief.

At his deposition, when asked what he is looking for from this lawsuit, he responded that he is "not looking for anything big . . . . I just want him to know what he did was wrong.  He was wrong.  What he did was foul, and that he did wrong."   The defendant police officer has retired from the Meriden Police Department and is no longer a police officer.  This matter is moot because the relief sought can no longer be given nor is it needed.  Summary judgment should enter in favor of the defendant.

## CONCLUSION

For the foregoing reasons, Officer Art Thode respectfully requests that summary judgment be entered in his favor.

THE DEFENDANT
ART THODE


By:_____/s/_____
    Deborah L. Moore
    His attorney
    City of Meriden, Department of Law
    City Hall
    142 East Main Street
    Meriden, CT 06450
    (203)630-4045
    (203)630-7907   fax
    dmoore@ci.meriden.ct.us
    Juris No. ct17792

## **CERTIFICATION**

This is to certify that on the 22nd of September, 2004, a copy of the foregoing was mailed, postage prepaid to the following:  **MICHAEL MARTORAL, PRO SE**, MacDougall-Walker Correctional Facility, 1153 East Street, Suffield, CT  06080.


___/s/_____
Deborah L. Moore

18