UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MICHAEL MARTORAL<br>PRO SE | : | CIVIL ACTION |
| | : | PRISONER |
| VS. | : | 3:02CV12(AWT)(DFM) |
| OFFICER ART THODE | : | SEPTEMBER 22, 2004 |

**LOCAL RULE 9(c)1 STATEMENT OF MATERIAL FACTS IN SUPPORT OF THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 9(c) of the Local Rules of Civil Procedure, the Defendant ART THODE respectfully offers the following statement of material facts in support of the motion for summary judgment:

1. By a complaint dated July 21, 2002, the plaintiff brought this action naming the City of Meriden, the Meriden Police Department, and Officer Art Thode as a result of the plaintiff being allegedly hit while he was being removed from his hiding spot under a bed in an apartment he had entered in an attempt to run from the police. (Complaint, page 3).

2. Specifically, the plaintiff claims he was pepper sprayed prior to being pulled out from under the bed (Background, page 3), that his hair was pulled and his face was pushed into a briefcase by Officer Thode. (Claim 1). He also claims that he was hit over the head by some object removed from Officer Thode's belt.

1

        (Claim 2), and this hair was pulled by Office Thode in front of some of his relatives (Claim 3).

3. The plaintiff has failed to state the jurisdiction for his claim (complaint, page 2).

4. The plaintiff indicates that the defendants were not acting under color of state law (complaint, page 2)

5. The plaintiff claims that he is in imminent danger of serious physical injury because he is experiencing "trauma, I be [sic] having bad dreams, I'm mentally disturbed cause I am afraid of being alone cause I don't know how any officers going to react, I get nervous breakdowns." (complaint p. 6)

6. The plaintiff's sole request for relief is "medical report on what had happened." (Complaint, Section G, page 7).

7. By a decision dated July 14, 2003, the Court (Thompson, J) DISMISSED the plaintiff's claims against the City of Meriden and the Meriden Police Department.

8. Judge Thompson DENIED the defendant's request for a More Definite Statement in the same ruling.

9. As a result of the July 14, 2003 decision, Officer Art Thode is the sole remaining Defendant in this action.

10. Art Thode provided an answer and special defenses to the plaintiff's complaint.

11. The Six Special Defenses Defendant Thode raised are as follows:

1. To the extent that the plaintiff's sole request for relief seeks the "medical reports on what had happened", and said medical reports are attached to the complaint, the plaintiff's request for relief has already been provided, and the plaintiff no longer has stated a cause of action upon which relief can be granted.

2. The plaintiff's own negligence directly contributed to any and all of his alleged injuries and damages.

3. The defendant enjoys qualified immunity for his alleged actions, as his conduct did not violate any clearly established constitutional rights and that it was objectively reasonable for the defendant to believe that his acts didn't violate the plaintiff's rights.

4. The acts of the defendant were justified inasmuch as the plaintiff, fleeing from the police and hiding under the bed of an apartment he had broken into, posed an immediate threat to the safety of the defendant, other officers and the residents of the apartment. Furthermore, he was resisting arrest at the time. To the extent that the plaintiff was injured, the defendant had reason to believe that his actions were lawful and just at the time in question.

5. Plaintiff's complaint fails to state a claim upon which relief can be granted.

6. The acts as alleged by the plaintiff were not committed by Defendant Art Thode.

12. On June 9, 2000, Officer Art Thode interviewed a Ms. Michele Loiler, who called the police to complain that Michael Martoral, her ex-boyfriend, had threatened her after discovering that she had obtained a restraining order against him. See, Officer Thode's police Report, deposition of M. Martoral p. 20

13. Officer Thode notified the Meriden Police to be on the lookout for Michael Martoral, and Officer Terry Smith found him a short time afterward. See, Police Report of T. Smith.

14. Officer Smith brought Michael Martoral to the public housing apartment complex where Ms. Loiler was giving her statement to police. See, Police Report of T. Smith, deposition of M. Martoral pp 18-19.

15. Officer Smith learned that Michael Martoral was under arrest, and she attempted to place handcuffs on him. See, Police Report of T. Smith.

16. Michael Martoral pulled away from Officer Smith and escaped by running into the Mills Public Housing Apartment complex. See, Police Report of T. Smith and M. Merrigan, deposition of M. Martoral, pp. 21-22.

17. Officer Merrigan and Officer Lavoie followed Michael Martoral into the public housing, up three flights of stairs. See, Police Report of M. Merrigan

18. Michael Martoral ran to an apartment, opened the door, let himself in and closed and locked the door behind him. See, Police Report of M. Merrigan, deposition of M. Martoral, pp. 22-23.

19. The resident of the apartment opened the door for the police officers. She was in the apartment with one of her babies, who was sleeping in one of the bedrooms. See, Police Report of M. Merrigan.

20. Upon searching the apartment, the officers found the bedroom in which Michael Martoral was hiding. See, Police Report of M. Merrigan.

21. Michael Martoral was hiding under a bed, with his feet sticking out. See, Police Report of M. Merrigan, Deposition of M. Martoral p. 23.

22. The police officers announced that if he did not come out voluntarily, they would "spray" him. See, Police Report of M. Merrigan

23. He did not come out and the officers used the OC foam. See, Police Report of M. Merrigan, Deposition of M. Martoral p. 23.

24. Michael Martoral still did not come out from under the bed, and resisted when the officers began to pull him out. See, Police Report of M. Merrigan.

25. During the struggle to contain Michael Martoral, the bed tipped, the milk crates supporting the bed were knocked over and other objects in the room were "knocked about". See, Police report of M. Merrigan.

26. Michael Martoral claims that during the struggle, he was pushed into a briefcase, his hair was pulled, and that he was hit on the head from an object removed from the officer's belt. These events are not found in any of the police reports.

27. While wrestling with Michael Martoral, the police officers observed a hatchet and a gun in the room, within inches of Michael Martoral. See, Police Report of M. Merrigan.

28. The police officers only learned later that the gun was a paintball gun designed to look like an M16 with a collapsible stock. See, Police Report of M. Merrigan.

29. Michael Martoral continued to struggle with the officers after he was handcuffed and when he was being escorted out of the building and to the police cruiser. See, Police Report of M. Merrigan.

30. At the Police Department, Michael Martoral was observed for after-effects of the OC Spray. He had no side effects, but complained of a cut to the head. See, Police Report of M. Merrigan.

31. Michael Martoral was taken to Meriden's Midstate Hospital by ambulance, treated for his cut and was returned to police custody. See, Police Report of M. Merrigan.

32. There are no other allegations of misconduct by any other police officer other than the named Defendant Art Thode.

33. Michael Martoral has identified Officer Art Thode as the police officer in the apartment by his name badge. See, Deposition of Michael Martoral, pp. 32, 38, 77.

34. In addition to the relief requested in the complaint, Michael Martoral, when asked what he is suing for, responds that he is "not looking for anything big . . . . I just want him to know what he did was wrong. He was wrong. What he did was foul, and that he did wrong." Deposition of Michael Martoral, p. 75.

35. Michael Martoral has not asked for anything further.

36. In March, 2000 Michael Martoral was hit with a baseball bat and on June 1, 2000 Michael Martoral was pistol-whipped, both events requiring trips to the hospital. Deposition of M. Martoral, pp. 41-42.

37. When in prison, Michael Martoral received a broken jaw from a jailhouse brawl and removed the wires holding his jaw in place by himself. Deposition of Michael Martoral pp. 49-51.

38. Michael Martoral has tried to commit suicide several times: in prison, while at the Whalley Ave. Correctional facility, and in the late 1990's. Deposition of Michael Martoral, pp. 51-55.

39. There has been no discovery conducted by the plaintiff in this matter. The plaintiff has not conducted written discovery, nor has he taken the deposition of the defendant.

40. The defendants have taken the deposition of the plaintiff.

THE DEFENDANT
ART THODE

By:_____/s/_____
    Deborah L. Moore
    His attorney
    City of Meriden, Department of Law
    City Hall
    142 East Main Street
    Meriden, CT 06450
    (203)630-4045
    (203)630-7907   fax
    dmoore@ci.meriden.ct.us
    Juris No. ct17792

## **CERTIFICATION**

    This is to certify that on the 22nd of September, 2004, a copy of the foregoing was mailed, postage prepaid to the following:  **MICHAEL MARTORAL, PRO SE**, MacDougall-Walker Correctional Facility, 1153 East Street, Suffield, CT  06080.

_____/s/_____
Deborah L. Moore